Donna **WALIHAN**, Individually and as Next Friend of Cynthia Walihan Crispi and Pamela Walihan Patrich, Minors, Plaintiffs–Appellants,

v.

**ST. LOUIS–CLAYTON ORTHOPEDIC GROUP, INC. and Ronald C. Hertel, M.D., Defendants–Respondents.**

Nos. 61724, 61779.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 9, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 10, 1993.

Application to Transfer Denied
April 20, 1993.

Mark G. Arnold and David A. Boresi, St. Louis, for plaintiffs-appellants.

Stokes & O'Malley, P.C., Morris E. Stokes and Linda A. Cary, Clayton, for defendants-respondents.

CRANDALL, Presiding Judge.

Plaintiffs, Donna Walihan, individually and as next friend to Cynthia Walihan Crispi and Pamela Walihan Patrich (collectively referred to as "Walihans"), appeal from a final judgment entered by the trial court in favor of defendants St. Louis–Clayton Orthopedic Group, Inc. and Dr. Ronald C. Hertel (collectively referred to as "defendants") on the claim of Walihans for the wrongful death of James Walihan (decedent). We reverse and remand.

We view the evidence in a light most favorable to the verdict. Donna Walihan is the widow of decedent. Cynthia Walihan Crispi and Pamela Walihan Patrich are the children of Donna Walihan and decedent. Decedent received a back injury while working at his job in Alton, Illinois. As a result of the injury, decedent underwent surgery.

Thereafter decedent consulted Hertel due to continuing problems with his back. Hertel was employed by defendant St. Louis–Clayton Orthopedic Group, Inc. Decedent did not return to work following the accident, in part because of the back injury.

Decedent underwent a second surgery. Immediately following that surgery he developed blood clots that caused a fatal pulmonary embolus. Hertel knew or should have known that decedent was at risk and negligently failed to properly treat decedent thereby causing his death.

Walihans brought suit in Illinois, naming as defendants several Illinois entities allegedly responsible for the work-related injury which necessitated the two surgeries. Donna Walihan, as executrix of decedent's estate, asserted essentially two actions, one for wrongful death under the Illinois statute and another for bodily injury sustained by decedent from the time of the incident up until his death.

A settlement was reached between Walihans and the Illinois defendants, for $300,-000.00. Before resolving the Illinois case, Walihans also brought the underlying action in Missouri against Hertel, St. Louis–Clayton Orthopedic Group, Inc., and St. Luke's Episcopal Presbyterian Hospital (St. Luke's), pursuant to Missouri's wrongful death statute, § 537.080, RSMo (1986).[1] Defendants denied the allegations, and in their amended answer affirmatively pleaded the defense of "setoff."[2]

Prior to trial, St. Luke's settled with Walihans for $40,000.00. Thereafter, the jury returned a verdict awarding Walihans $300,000.00 against the remaining defendants. The trial court, on the motion of Hertel and St. Louis–Clayton Orthopedic Group, Inc., reduced the claim of Walihans' by both the Illinois settlement and the settlement with St. Luke's, and by reason thereof entered judgment in favor of defendants.

Walihans raise two points on appeal, contending that defendants were not entitled to a reduction based on the Illinois settlement[3], and thus the trial court erred in entering judgment for defendants, on the grounds that: (1) defendants failed to present any evidence as to the proper amount to be discharged, and (2) defendants waived the right to claim a discharge for failure to tender a jury instruction on the issue.

The statutory basis for the reduction, if at all, of Walihans' claim by the amount of

---

1. All further statutory references are to RSMo (1986) unless otherwise indicated.

2. Both plaintiffs and defendants use the terms "setoff" and "offset" in discussing discharge or reduction under § 537.060. Common law setoff, however, is more in the nature of an independent action and constitutes a counterclaim. *Buchweiser v. Estate of Laberer*, 695 S.W.2d 125, 129 (Mo. banc 1985).

3. Walihans do not contest the portion of the judgment deducting the $40,000.00 paid in settlement by St. Luke's. Because the cause of action brought against Hertel, St. Louis–Clayton Orthopedic Group, Inc., and St. Luke's was for decedent's wrongful death, i.e., the medical malpractice, and the Missouri defendants were jointly liable, a credit in the amount settled by St. Luke's was proper. § 537.060.

the Illinois settlement is derived from § 537.060, which provides in pertinent part: ... When an agreement by release, covenant not to sue or not to enforce a judgment is given in good faith to one of two or more persons liable in tort *for the same injury or wrongful death,* such agreement shall not discharge any of the other tort-feasors for the damage unless the terms of the agreement so provide; however such agreement shall reduce the claim by the stipulated amount of the agreement, or in the amount of consideration paid, whichever is greater....

(emphasis added).

A reduction under § 537.060 is similar in nature to the common law defense of satisfaction. In order to obtain the statutory relief sought, defendant must both plead and prove the matter as an affirmative defense. *See State ex rel. Normandy Orthopedics v. Crandall,* 581 S.W.2d 829, 834 (Mo. banc 1979). *Cf. Staehlin v. Hochdoerfer,* 235 S.W. 1060, 1061 (Mo.1921).

Section 537.060 does not alter, but rather implements the common law rule that a plaintiff is entitled to only one satisfaction for the same wrong. *See Crandall,* 581 S.W.2d at 831 n. 1. Accordingly, the receipt of full satisfaction from either tortfeasor for the wrong for which both are liable would bar plaintiff's recovery from the other for the same injury. *Cf. Haley v. Byers Transportation Co.,* 394 S.W.2d 412, 416 (Mo.1965); *Staehlin,* 235 S.W. at 1062. Further, when the injured plaintiff settles with one of the tortfeasors for a portion of the wrong for which each is liable, "the injured person still retains her cause of action against the other tort-feasors and recovery may be had for the balance of the injury." *Berry v. Kansas City Public Service Co.,* 343 Mo. 474, 121 S.W.2d 825, 833 (1938).

Relief pursuant to § 537.060 is not appropriate, however, when the injuries involved are not the same. Thus where separate torts result in both an original injury and an aggravation thereof, such as when a physician negligently treats the original injury, the successive tortfeasor, e.g., the physician, is not liable for the underlying injury and is only responsible for the harm flowing from his own negligence. *State ex rel. Baldwin v. Gaertner,* 613 S.W.2d 638, 640 (Mo. banc 1981). Likewise, satisfaction of the original injury itself does not necessarily bar a subsequent action for damages based upon the aggravating injury caused by the physician's negligence. *Schumacher v. Leslie,* 360 Mo. 1238, 232 S.W.2d 913, 917 (1950).

Accordingly, the Illinois defendants, as the initial tortfeasors, were potentially liable for all the natural and proximate injuries flowing from the initial tort, including the consequences of Hertel's medical treatment of the original injury. And based upon the jury verdict, the defendants herein are jointly liable with the Illinois defendants for those damages arising from the death. The question, then, is whether the settlement between Walihans and the Illinois defendants was for the "same injury or wrongful death" that was the subject of the Missouri wrongful death action.

Walihans' second amended complaint in the Illinois action sought damages based upon both decedent's injuries and his death. Similarly, Walihans' release pertains to both the injury claim and the wrongful death:

> Donna Walihan ... hereby releases ... from any and all claims of any kind that she may have, either in her position as Executrix of the Estate of James Walihan, deceased, or that she might personally have ... *because of the injuries sustained* by James Walihan or Walihan[s] *when James Walihan was injured on or about March 14, 1983,* at the coal gasification plant at East Alton, Illinois, *and including the death of James Walihan on or about September 12, 1984.*
>
>      *      *      *

(emphasis added). Illinois permits recovery for both wrongful death and damages incurred prior to death, under the survival statute. *Murphy v. Martin Oil Co.,* 56 Ill.2d 423, 308 N.E.2d 583, 586–587 (1974); *Bryant v. Kroger Co.,* 212 Ill.App.2d 335, 156 Ill.Dec. 487, 488, 570 N.E.2d 1209, 1210

(1991). *See* Ill.Rev.Stat., ch. 110½, para. 27–6 (Supp.1992) (renumbered Ill.Rev.Stat., ch. 755, para 5/27–6 (1992)). Thus the Illinois release encompassed settlement of those damages resulting from both the death and the initial injury suffered.

■ Yet as previously noted, the Missouri wrongful death claim could not include the work-related personal injury claim. Therefore any right to reduce the Missouri claim by the Illinois settlement would be limited to the portion of the settlement allocable only to decedent's death. *See State ex rel. Baldwin*, 613 S.W.2d at 640; *Staehlin*, 235 S.W. at 1062; *Cannon v. S.S. Kresge Co.*, 233 Mo.App. 173, 116 S.W.2d 559, 571–572 (1938).

The Illinois settlement was not specifically allocated between the injury claim and the death claim. Here, after trial, defendants' proof consisted of the existence and the total amount of the Illinois settlement. At issue then is whether defendants met their burden in establishing the amount for which they were entitled in reduction of Walihans' claim.

■ Whether a settlement with and release of one tortfeasor constitutes full satisfaction and thereby operates as a release of other tortfeasors is governed by the intentions of the parties to the release. *Crandall*, 581 S.W.2d at 833. *Crandall* involved the effect of a release, made between the injured party and the original tortfeasor, on a subsequent action brought against a successive tortfeasor. The Missouri Supreme Court relied upon *Ash v. Mortensen*, 24 Cal.2d 654, 150 P.2d 876 (1944), which concluded that

> no presumption of full satisfaction [of the aggravating injury claim] would be indulged merely because the plaintiff settled with the original tortfeasor who was exposed to liability for the alleged malpractice as well as the original injuries.

*Crandall*, 581 S.W.2d at 833 (*paraphrasing Ash*, 150 P.2d at 879).

■ Under *Crandall*, the burden of proof is on the party seeking release based on prior full satisfaction. Thus,

> '[w]hen a general release discloses on its face that it has been given to named releasees who denied liability but made payment by way of compromise and settlement, then and in that event *other alleged wrongdoers who were not parties to the release and made no payment toward satisfaction can fairly be called upon to show* that either the release which they rely on was intended to discharge them or *that the releasor has received full compensation.*'

*Crandall*, 581 S.W.2d at 834 (emphasis provided and added) (*quoting Fieser v. St. Francis Hospital & School of Nursing, Inc.*, 212 Kan. 35, 510 P.2d 145, 151 (1973)).

■ Defendants cite to *Hogan v. Armstrong World Industries*, 840 S.W.2d 230 (Mo.App.1992), as well as cases from other jurisdictions, for the proposition that a settlement involving nonallocated or undifferentiated claims presumptively indicates an intention by the settling parties to treat the claims as indivisible. According to defendants then, the entire verdict, $300,000.00, should be reduced by the settlement amount of $300,000.00 because Walihans failed to prove that the wrongful death claim exceeded that which has already been received.

■ The fallacy of defendants' reasoning lies in the nature of the undifferentiated claims—that is, they involve separate injuries resulting from successive torts, of which the Missouri defendants are only jointly liable for those damages arising from the wrongful death. Consequently, there is no presumption that the settlement amount represents the parties' intention to effect a *full* satisfaction of *both* claims, as application of such a presumption would render one of the claims subject of the Illinois settlement worthless.

A review of *Hogan* is illustrative. There, plaintiffs, husband and wife, brought suit against a number of asbestos manufacturers for personal injuries and derivative claims. Prior to trial, plaintiffs entered into a settlement agreement with all but one of the defendants. The agreement provided for settlement of individual claims maintained by both husband and wife, yet failed to differentiate between them. As a result, upon return of the

verdict against the remaining defendant in favor of husband only, the court reduced the claim, pursuant to § 537.060, by the entire settlement amount. *Id.* at 237.

The present case is distinguishable from *Hogan.* While defendants herein and the Illinois defendants are each liable for the wrongful death claim, only the original tortfeasor is accountable for the damages derived from the work-related injury. In *Hogan,* however, the defendants were jointly liable for all claims brought by husband and wife. In addition, the jury in *Hogan* found against the wife as to her separate claim, in effect finding that such claim was worthless. Thus, the defendant in *Hogan* met his burden under § 537.060.

Defendants also direct this court to case law of other jurisdictions. *See, e.g., Nauman v. Eason,* 572 So.2d 982 (Fla.App. 1990); *Devlin v. McMannis,* 231 So.2d 194 (Fla.1970); *In re Lendvest Mortgage, Inc.,* 123 B.R. 623 (Bankr.N.D.Cal.1991). In addition to not being binding on this court, the cases cited are distinguishable on the ground that the tortfeasor in each was liable for all claims subject to the settlement agreement at issue.

The failure of Walihans to differentiate between the injury and death claims within the Illinois settlement agreement does not, ipso facto, warrant application of the entire settlement amount to the reduction of the Missouri claim. Even if there had been an allocation between the two claims, it would not necessarily be binding on the Missouri defendants because they were not parties to the agreement. Certainly the Missouri defendants would have the right to attempt to prove that the settlement of the Illinois death claim was in fact settled for an amount greater than that specified in the release and that the Missouri defendants were thus entitled to a greater reduction in plaintiffs' Missouri death claim. Furthermore, the Missouri defendants would also have the right to attempt to prove that the agreement was not entered into in "good faith," as § 537.060 requires.

The amount of the Illinois settlement attributable to the Missouri claim is a disputed issue. While defendants offered evidence bearing on that issue, that evidence was not conclusive as a matter of law. Accordingly, the trial court erred in summarily entering judgment in favor of defendants. Walihans' first point is granted.

Walihans next contend that defendants waived any right to a reduction under § 537.060 because they failed to offer a jury instruction on the issue. *See* MAI 7.02 [1983 Revision].

Defendants took the position that the amount attributable to the Missouri death claim from the Illinois settlement was not in dispute. In such a situation, it is the function of the trial court to reduce the amount recovered by the amount of the settlement and no instruction is given to the jury. MAI 1.06 [1983 New]; *Allen v. Foster,* 668 S.W.2d 277, 280 (Mo.App.1984). Although defendants' course of action, and the trial court's entry of judgment, was erroneous as discussed under point one of this opinion, it clearly was not a waiver of any right to relief. Defendants pleaded their right to an offset and pursued it at trial. Plaintiffs' second point is denied.

MAI 1.06 Committee Comment (1983 New) sets forth the procedure for dealing with undisputed or disputed prior settlement payments. When the amount of the prior settlement is disputed raising factual issues for the fact finder, it may be necessary to bifurcate the issue from the rest of the trial to avoid confusing the jury. That decision would be left to the sound discretion of the trial court. Given the posture of this case, bifurcation is unavoidable.

The judgment of the trial court entered in favor of defendants is reversed and the cause is remanded with directions to reduce plaintiffs' claim as established by the jury verdict by the $40,000.00 settlement with St. Luke's, and to proceed with a factual determination, with or without a jury at the option of the parties, of the amount of the Illinois settlement attributable as a reduction of plaintiffs' Missouri death claim and to enter judgment accordingly.

PUDLOWSKI and GRIMM, JJ., concur.