Donnie G. BROWN, Appellant,

v.

KNEIBERT CLINIC, Respondent.

No. 63394.

Missouri Court of Appeals,
Eastern District,
Southern Division.

Nov. 16, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 14, 1994.

Application to Transfer Denied
March 22, 1994.

Albert E. Schoenbeck, St. Louis, for appellant.

Richard K. Kuntze, Cape Girardeau, for respondent.

CRIST, Judge.

Plaintiff, Donnie Brown, appeals the trial court's reduction of his $156,500 verdict against Kneibert Clinic by the amount of his prior settlement for the same injury, pursuant to § 537.060, RSMo 1986. We affirm.

Brown originally brought suit against Boston Scientific Corporation (Boston Scientific); Dr. E.T. Hansbrough, M.D.; and Kneibert Clinic (Clinic) for injuries caused to his colon and bowel. Dr. Hansbrough practices medicine as a partner in the Clinic. Brown went to the Clinic on August 3, 1990, for a routine medical examination. Dr. Kenneth Li, another partner at the Clinic, recommended a colonscopic examination of Brown because he complained he was intermittently passing blood in his stool. This examination was performed with a colonscope, a flexible instrument approximately 30 inches in length with a camera on the end, which allows the colon to be viewed on a television screen.

During Brown's colonscopic examination, Dr. Li discovered a large polyp in Brown's sigmoid colon. Dr. Li also had Dr. Hansbrough look at the polyp and then recommended a biopsy. Dr. Hansbrough performed the biopsy and both doctors recommended the polyp be removed. Brown met

with Dr. Hansbrough and agreed to let him remove the polyp in an outpatient surgery procedure using a polypectomy snare which is attached to the end of the colonscope. The polypectomy snare conducts an electrical current which is used for cutting tissue. Dr. Hansbrough used a polypectomy snare manufactured and sold by Boston Scientific to remove the polyp on Brown's colon. During this procedure, a wire loop on the polypectomy snare broke off and struck against the wall of the colon. Dr. Hansbrough suspected this may have caused a tear in the colon wall and ordered an x-ray. The x-ray revealed there was free air in the peritoneal cavity, indicating a hole in the colon. Dr. Hansbrough performed an open laparotomy to repair the hole and look for any additional damage. He also checked the abdomen for fluid which might be leaking from the bowel but did not thoroughly check the entire bowel with his fingers.

Dr. Hansbrough continued to check on Brown for several days after this operation. Three days after the operation Dr. Hansbrough left for vacation and Dr. Christy assumed care of Brown. Brown's condition worsened. On September 4, Dr. Christy decided to perform a second laparotomy because Brown continued to suffer from an inter-abdominal infection. During this procedure, Dr. Christy found a second perforation in the small intestine, several centimeters from the first hole. Dr. Christy repaired this perforation, but a third operation was also necessary due to peritonitis, an infection which develops in the peritoneal cavity.

■ Brown brought suit against Dr. Hansbrough and the Clinic for malpractice. He also filed a products liability claim against Boston Scientific based on alleged faulty manufacturing of the polypectomy snare. Prior to trial, Brown entered into a settlement agreement with Boston Scientific. Brown refused to release the terms of this settlement prior to trial. At trial, Brown also dismissed his claim against Dr. Hansbrough and proceeded solely against the Clinic. The jury entered a verdict against the Clinic for $156,500. On November 25, 1992, the court entered judgment finding in part:

> Plaintiff informs the Court that the settlement achieved between the Plaintiff and the defendant Boston Scientific Corporation was in the amount of $197,500. The Court finds that the provisions of Section 538.230, RSMo. do not apply and that the Court is guided by the provisions of Section 537.060, RSMo., and accordingly the Court shall reduce the plaintiff's claim by the amount of said settlement, which shall have the effect of reducing plaintiff's claim against Kneibert Clinic to zero.

Brown appeals, alleging § 537.060, RSMo 1986, is inapplicable because Boston Scientific and the Clinic were independent and successive tortfeasors rather than joint tortfeasors. Brown alleges since two separate torts were committed by Boston Scientific and the Clinic, the amount of the Boston Scientific settlement was not properly deducted from the judgment against the Clinic. This argument is without merit. Section 537.060 states in pertinent part:

> When an agreement by release, covenant not to sue or not to enforce a judgment is given in good faith *to one of two or more persons liable in tort for the same injury* or wrongful death, such agreement shall not discharge any of the other tort-feasors for the damage unless the terms of the agreement so provide; however, such agreement shall reduce the claim by the stipulated amount of the agreement, or in the amount of consideration paid, whichever is greater ... (emphasis added).

Accordingly, it does not matter whether two separate torts were committed by the Clinic and Boston Scientific as long as their actions make them liable in tort for the same injury. *Id.* Here, although the Clinic and Boston Scientific performed two totally separate tortious acts, the result of both of these acts was one injury to Brown. Therefore, Brown is only entitled to recover once for the injury resulting from both acts.

■ This court recently addressed the issue of offsets under § 537.060 in *Walihan v. St. Louis–Clayton Orthopedic*, 849 S.W.2d 177 (Mo.App.1993). In *Walihan*, the plaintiff's decedent underwent surgery in St.

Louis, Missouri, as a result of a work-related back injury which occurred in Illinois. During the surgery, decedent developed blood clots which resulted in fatal pulmonary embolus. Plaintiff brought a malpractice action against the St. Louis doctors which resulted in a verdict in plaintiff's favor. Prior to the Missouri malpractice trial, plaintiff had entered into a $300,000 settlement for the Illinois personal injuries and wrongful death claims. A settlement was also reached with one of the Missouri hospitals for $40,000.

In *Walihan*, the defendants alleged the Missouri verdict should be reduced by the amount of the previous settlements. Illinois law allows separate claims for wrongful death and for damages incurred prior to death. *Id.* at 180[6]. Because the Missouri malpractice claim only involved claims for decedent's death, the *Walihan* court found the verdict against the Missouri doctors for malpractice should be offset only by settlement amounts attributable to decedent's death. *Id.* The court held the portions of the settlement attributable to the Illinois personal injury claim could not be offset against the malpractice verdict because this portion of the settlement was not for the same injury or wrongful death claim. *Id.;* § 537.060.

Here, Brown suffered an injury to his colon when the polypectomy snare broke during the polypectomy procedure Dr. Hansbrough was performing. Although Brown's colon injury was aggravated by Dr. Hansbrough's negligent treatment, Boston Scientific, as the original tortfeasor, is liable for all damages, including those caused by negligent treatment of the original injury. *State ex rel. Bitting v. Adolf,* 704 S.W.2d 671, 672–73[1] (Mo. banc 1986).

The jury's verdict awarded Brown damages for past-economic damages (including past medical damages), future medical damages, and both past and future non-economic damages. These damages were awarded against Clinic for its negligent treatment of Brown. Since Boston Scientific is liable for the original injury plus all additional injuries due to medical malpractice, the verdict against the Clinic was properly reduced by the amount of the previous settlement with Boston Scientific. *Id.*

Brown also filed a reply brief asserting the Clinic is not entitled to relief under § 537.060 because it failed to both plead and prove this defense at trial. Brown raised this argument for the first time in his reply brief. Assignments of error made for the first time in a reply brief are not properly presented for appellate review. *Stewart v. Strums,* 784 S.W.2d 257, 260[3] (Mo.App. 1989); *Big Boys Steel v. Hercules Const. Co.,* 765 S.W.2d 684, 687[6] (Mo.App.1989). Further, fairness issues preclude us from considering arguments which the Clinic had no opportunity to address. *Big Boys Steel,* 765 S.W.2d at 687. Point denied.

Judgment affirmed.

GARY M. GAERTNER, C.J., and REINHARD, J., concur.