**Ingrid TAYLOR, Plaintiff/Appellant,**

v.

**Fred CHAPMAN, Defendant/Respondent.**

**No. 68848.**

Missouri Court of Appeals,
Eastern District,
Division Two.

July 9, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 15, 1996.

Application to Transfer Denied
Sept. 17, 1996.

Sandra A. Steiniger, Rabbitt, Pitzer & Snodgrass, P.C., St. Louis, for Appellant.

Lyndon P. Sommer, Sandberg, Phoenix & von Gontard, P.C., St. Louis, for Respondent.

CRANDALL, Judge.

Plaintiff, Ingrid Taylor, appeals from the trial court's grant of summary judgment in favor of defendant, Fred Chapman, in plaintiff's defamation action. We affirm.

In our review of summary judgment, we consider the evidence in the light most favorable to the non-moving party. *ITT Commercial Fin. Corp. v. Mid.-Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo.banc 1993). The evidence, viewed in that light, reveals that plaintiff was the manager of Park Tower Condominium (tower) at the time of trial. Defendant owns one of the tower condominiums, and is a resident.

On January 29, 1993, defendant contacted a postal inspector to complain that plaintiff was removing or obstructing tower residents' mail. The plaintiff had spare keys to the resident mailboxes at the time. The postal inspector opened a file and sent plaintiff a letter stating that he had received a complaint that she was obstructing correspondence. Defendant informed the postal inspector that he had not actually seen plaintiff removing mail from the resident mailboxes,

nor did he know of anyone who had seen her remove mail. After the inspector made a preliminary investigation, he determined there was no evidence to support defendant's suspicions and closed the file.

On February 1, 1993, another resident, Librach, loudly confronted plaintiff in the tower lobby, accusing her of "getting into" the mailboxes. Another resident was present in the lobby when the incident occurred and overheard Librach's accusations. Librach was originally named as a defendant in this action. He entered into a settlement with plaintiff and was dismissed from the suit.

On July 16, 1993, defendant sent a letter to all the residents of the tower. The letter, which mostly complained of increased condominium fees and the high cost of a planned garage repair, was written to encourage homeowners in the condominium association to vote for a resolution defendant was proposing at an upcoming Board meeting. The Board had refused to bring this same resolution to a vote at the annual meeting held one month prior to publication of the letter.

The allegedly libelous statement found in the letter says that the plaintiff, along with three other persons, "apparently conspired to conceal from the owners, the Board, and the Treasurer, that the Association lacked authority to intercede in the sale contract of the 'Coal Hole' and 'Candicci's' and that they misappropriated $ 10,400.00 for payoffs with Association funds."

Plaintiff brought this defamation action against defendant alleging libel based on statements made in the letter defendant wrote and delivered to all homeowners in the tower, and slander based on defendant's complaint to the postal inspector that he believed plaintiff might be removing or obstructing mail from the mailboxes. The trial court granted summary judgment, finding that defendant's letter was privileged with regard to the libel count, and that no extrinsic evidence of plaintiff's damages was shown with regard to the slander count.

Plaintiff contends that the trial court erred in granting summary judgment because 1) defendant's letter was not privileged; 2) suf-ficient evidence of malice existed to take the issue to a jury; and 3) extrinsic evidence was not necessary to prove damages.

■ A defendant may establish a right to judgment as a matter of law by showing that the plaintiff, after an adequate period of discovery, has not been able to produce and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of the elements of the plaintiff's action. *ITT Commercial Finance Corp.*, 854 S.W.2d at 381. The salient issue on appeal is whether plaintiff produced sufficient evidence to allow the trier of fact to find the existence of actual damages.

■ Historically, courts made distinctions between *per se* and *per quod* defamation actions. *Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 308 (Mo.banc 1993). False statements that impugned plaintiff's ability to engage in his occupation or business, charged plaintiff with a crime, insinuated that plaintiff was inflicted with a loathsome disease, or claimed plaintiff was unchaste were considered slander *per se* and damages were presumed from the nature of the defamation. *Id.* Where the statements were not actionable as slander *per se*, the tort was considered slander *per quod*, and special damages had to be pleaded and proved. *Id.* Likewise, libel *per se* referred to a statement whose defamatory meaning was facially apparent, whereas libel *per quod* was a statement whose defamatory nature had to be proved through extrinsic facts. *Id.* Libel *per se* was actionable without any proof of damages, while libel *per quod*, like slander *per quod*, required proof of actual damages. *Id.* However, the Missouri Supreme Court in *Nazeri* held that the old rule of *per se* and *per quod* is no longer applicable. *Id.* at 313. Plaintiffs must now prove actual damages in all defamation cases. *Id.*

■ When questioned about damages in her deposition, the plaintiff stated that her integrity had been tarnished. She added, "People lose their trust in the person that is supposed to be managing their building." Plaintiff did not support this conclusion and admitted no one told her they had lost trust or confidence in her ability. Defendant's

counsel elicited from plaintiff that she did not seek medical treatment, psychiatric or psychological counseling, nor was she treated with any medication. Plaintiff was not disciplined by her employer in any way and had no change in her duties. She received a regular pay increase on her anniversary date. She received no negative feedback from the Board or other Tower residents.

Plaintiff has not articulated any summary judgment facts which demonstrate how she was injured. Her position as property manager was unaffected by defendant's actions. She stated that she worried about future job prospects, but she kept her own personnel file, thereby controlling her own employment record. She received no medical treatment, indicated no claim of stress or sleeplessness over the incidents, and apparently suffered no symptoms associated with mental distress. Plaintiff did not demonstrate professional or personal injury after an adequate discovery period. Plaintiff therefore failed to establish an essential element of her defamation case—actual damages.

■ In addition, plaintiff cannot differentiate between the damages, if any, attributable to defendant and the damages attributable to Librach. When asked to differentiate between the damage claimed because of defendant's conduct and the damage claimed because of Librach's conduct, plaintiff testified in her deposition, "They run along together." As pleaded by plaintiff, defendant and Librach are successive tortfeasors rather than joint tortfeasors. Plaintiff is unable to identify which damages are attributable to defendant alone because the damages, if any, are in her words, inseparable. *See, e.g. Brown v. Kneibert Clinic,* 871 S.W.2d 2 (Mo.App. E.D. 1993).

■ A plaintiff is entitled to only one satisfaction for the same injury. *Walihan v. St. Louis–Clayton Orthopedic Group, Inc.,* 849 S.W.2d 177, 180 (Mo.App. E.D.1993). Because plaintiff's damages "run along together", whatever injury plaintiff may have suffered is deemed satisfied. Plaintiff's point is denied.

In view of our holding we need not reach the other issues raised on appeal.

The judgment of the trial court is affirmed.

CRAHAN, P.J., and DOWD, J., concur.